**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Scott Booth, Thomas D. Loyd, Frank Solchaga, David Witte, Scott Wyman, Charles Perrin, Warren N. Higgins Jr., Knute Glade, Michael Seeber, Terry Nyblom, and Stephen Blake, forming the R-KIDS Legal Action Committee, Richard Doyle of the Men's Defense Association, William J. Hageman, Charles W. Hurd, Kyle Knutson, Jim Lovestar, Yves Nadeau, and Pratap Ramanathan of the National Coalition of Free Men, Twin Cities Chapter, on behalf of themselves individually, and all others similarly situated,

Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**

Civil File No. 00-1672 (MJD/JGL)

Sheryl Ramstad Hvass, Commissioner of Corrections; Michael O'Keefe, Commissioner of Human Services; Charles R. Weaver Jr., Commissioner of Public Safety; and Christine Jax, Commissioner of Children, Families, and Learning for the State of Minnesota,

Defendants,

Domestic Abuse Project, Central Minnesota Task Force on Battered Women, and Lakes Crisis Center,

Defendant-Intervenors.

---

John Remington Graham (Canada), Mark A. Olson on behalf of Plaintiffs.

Mark B. Levinger, Jennifer K. Park, Assistants Attorney General, on behalf of Defendants.

Beverly Balos, Maury Landsman, University of Minnesota Law School Clinics, on behalf of Defendant-Intervenors.



AUG 13 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Loretta M. Frederick, Battered Women's Justice Project, on behalf of Amici Curiae Battered Women's Justice Project and the Domestic Violence Legislative Alliance.

---

This motion is before the Court on cross motions for summary judgment. In the underlying action, Plaintiffs sued officials of the State of Minnesota, seeking a declaratory judgment that the Minnesota statutes which authorize funding for emergency shelters for battered women, and support services for "battered women and domestic abuse victims and their children," violate the Equal Protection clause of the United States Constitution. For the following reasons, the Court finds that Plaintiffs do not have standing to bring this claim, and dismisses the complaint for lack of jurisdiction.

**Background**

Plaintiffs, male citizens and taxpayers of the State of Minnesota, allege that Defendants, four Minnesota State Commissioners, are jointly responsible for administering the state statutes which provide funding mechanisms for emergency shelters for battered women, and support services for "battered women and domestic abuse victims and their children." Minn. Stat. §§611A.31-611A.375 (2000). The Center for Crime Victim Services (the "Center"), a division of the Department of Public Safety (DPS), is directly responsible for implementing the statutes, by distributing federal and state funds to programs that assist victims of domestic abuse. Three of the programs which receive the state and federal funds in question have also joined as Defendant-Intervenors.

The federal domestic abuse grants are authorized under the Violence Against

Women's Act ("VAWA"); Victims of Crime Act ("VOCA") and Family Violence Prevention Services Act ("FVPSA"). Of these federal grants, only the VAWA grant restricts the use of the funds to women domestic abuse victims, and their children. See Bibus Aff., ¶ 6. The state funds for assisting victims of domestic abuse consist of per diem funds and domestic abuse grant funds. According to Defendants, the state domestic abuse grant funds that the Center provides to shelters are used for both male and female victims of domestic abuse.

The Minnesota statutes which form the basis for this complaint were originally signed into law in 1977. Minn. Stat. §§611A.31-611A.375. Contrary to Plaintiffs' assertions, there is no one law entitled the "Minnesota Battered Women's Act"; rather, there is a series of statutes which, taken as a whole, provides a mechanism for the dispersal of federal and state funds to local programs that assist victims of domestic violence, in the form of grants (the statutes are referred to collectively as "the Act"). The chapter heading of the Statute is "Battered Women and Domestic Abuse." See Minn. Session Laws 2000, Ch. 445, Article 2. Prior to the 2000 legislative session, the relevant section of the Act read:

> "Subdivision 1. (Grants Awarded.) The commissioner shall award grants to programs which provide emergency shelter services and support services to battered women and their children."

In 2000, the Act was amended to read:

> "Subdivision 1. (Grants Awarded.) The commissioner shall award grants to programs which provide emergency shelter services to battered women and support services to battered women and domestic abuse victims and their children."

Minn. Stat. §611A.32 subd.1 (2000)(new language underlined). At other places in the

Act, similar changes were made; every reference to shelter services applies them only to women, and every reference to support services applies to "battered women and domestic abuse victims."

Plaintiffs charge that this disparity is an unconstitutional violation of the Equal Protection Clause, and now move for summary judgment. Defendant and Defendant Intervenors also move for summary judgment, both on the issue of standing and on the constitutional question.

## Standard

Summary judgment as a matter of law is appropriate when no genuine issue of material fact exists in the record. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). A fact is material if resolving disputes concerning that fact affects the outcome of the case. See Anderson, 477 U.S. at 248. A dispute is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. See id. at 252. On a motion for summary judgment, the Court views all evidence and inferences in a light most favorable to the nonmoving party. See id., 477 U.S. at 250. The moving party carries the burden to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(b); Celotex, 477 U.S. at 323.

## Analysis

The threshold issue to be addressed is whether the plaintiffs have standing to have this Court decide the merits of the case. See Warth v. Seldin, 422 U.S. 490, 498 (1975). Federal courts are limited in their jurisdiction; under the Constitution, only claims

involving a "case" or "controversy" may be considered. U.S.Const., art. III, §2. Even when a controversy is alleged, the complaining party must meet both the constitutional and "prudential" requirements of standing. See Allen v. Wright, 468 U.S. 737, 751 (1984).

First, as an "irreducible constitutional minimum," the party bringing the claim must be able to demonstrate that he has suffered an "injury in fact." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). To demonstrate "injury in fact," the plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983)(citations omitted).

In addition to alleging a direct injury, plaintiffs must show that the injury was personally suffered as a consequence of the alleged constitutional error, other than a psychological consequence produced by observation of conduct with which plaintiffs disagree. See Valley Forge Christian College v. Americans United for Church and State, 454 U.S. 464, 485-86 (1982). "Generalized grievances" shared by a large class of citizens are not normally considered palpable injury sufficient to confer standing. See Warth, 422 U.S. at 499; Valley Forge, 454 U.S. 486 ("[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy"). Once the injury has been established, the plaintiff must also show that it was caused by the defendant's conduct, and that the injury is redressable by a favorable decision. See Bennett v. Spear, 520 U.S. 154, 162 (1997).

The party invoking federal jurisdiction bears the burden of establishing these

constitutional elements of standing. See Warth, 422 U.S. at 508; Lujan, 504 U.S. at 561. At the summary judgment stage, Plaintiffs must set forth, by affidavit or other evidence, specific facts concerning the injury which for purposes of the summary judgment motion will be taken to be true. Fed. R. Civ. P. 56(e). When the suit is one, such as this, which challenges the legality of government action, and does not involve the plaintiff himself as an object of the action, then the plaintiff's burden becomes ""substantially more difficult" to establish." Lujan, 504 U.S. at 561, citing Allen, 468 U.S. at 758.

In this case, Plaintiffs allege that the constitutional violation is the unequal provision of funding for shelter services to male and female victims of domestic violence. No Plaintiff has shown that he was unable to obtain shelter services because he was male; in fact, not one of the Plaintiffs alleges that he sought, or wished to seek, shelter services at all. No Plaintiff has been a respondent in any order for protection, nor have any been convicted in any civil or criminal proceedings. Plaintiffs instead claim that their injury is the "prejudicial atmosphere [that] has been created in the state courts of Minnesota against men as a class of which the plaintiffs are members." Pls.' Answers to Interrogs. at 11.

This type of indirect injury is not enough to confer standing. See Allen, 468 U.S. at 740 (holding that stigmatizing injury caused by racial discrimination is not "injury in fact" where plaintiffs were not personally denied equal treatment). Having have failed to demonstrate, much less allege, that they suffered a direct "injury in fact" as a result of Defendants' conduct, Plaintiffs have failed to meet the basic constitutional requirements for standing.

In addition to these constitutional requirements, the Supreme Court has imposed "prudential" requirements for the courts to consider. See Allen, 468 U.S. at 751. Among these is a well-established rule against taxpayer standing. See Frothingham v. Mellon, 262 U.S. 447, 487 (1923). This limitation is deemed necessary because a "taxpayer's "interest in the moneys of the Treasury...is... so remote, fluctuating and uncertain, that no basis is afforded for [judicial intervention]." ASARCO, Inc. v. Kadish, 490 U.S. 605, 613 (1989), citing Frothingham, 262 U.S. at 487.

The Supreme Court, however, has carved out a narrow exception to the "no taxpayer standing" rule. In Flast v. Cohen, the Court held that a federal taxpayer may have standing if he can show 1) that the challenged congressional action is an exercise of congressional power under the taxing and spending clause of Art.I, §8 of the Constitution; and 2) that the challenged enactment exceeds specific constitutional limitations on the taxing and spending power. 392 U.S. 83, 106 (1968). The Flast Court recognized taxpayer standing to raise Establishment Clause claims because that clause specifically limits the taxing and spending power conferred by Article I. The Court left open, however, the question of whether there could ever be taxpayer standing to raise other types of claims. Id. at 104.

In a recent decision, the Eighth Circuit considered this question in connection with a Minnesota taxpayer challenge to state funding for abortions for low-income women. See Tarsney v. O'Keefe, 225 F.3d 929 (2000), cert. denied,121 S.Ct. 1364 (2001). The plaintiffs asserted that the use of state money for abortions infringed upon the free exercise of their religion. They argued that the Flast exception to the no-taxpayer rule should be expanded to include claims based on the Free Exercise

Clause.

In affirming the lower court's dismissal of the case, the Eighth Circuit noted that both the Supreme Court and the Appellate courts have consistently reaffirmed the extremely limited application of the Flast exception to Establishment Clause claims. See Id. at 937, citing, e.g., Bowen v. Kendrick, 487 U.S. 589, 618-620 (1988); Valley Forge, 454 U.S. at 476-82; United States v. Richardson, 418 U.S. 166, 176-80 (1974); Minnesota Fed. of Teachers v. Randall, 891 F.2d 1354, 1358 (8th Cir. 1989); Colorado Taxpayers Union, Inc., v. Romer, 963 F.2d 1394, 1399 (10th Cir. 1992), cert. denied, 507 U.S. 949 (1993).

The Tarsney Court found that the Free Exercise Clause is not a specific limitation on the taxing and spending powers of Congress, but a constitutional guarantee of non interference by the government with religious practice. Id. at 936. As such, any "Free Exercise Clause injury does not arise from the expenditure itself, but from the resulting limitation on religious exercise." Id. Therefore, a Free Exercise Claim could not meet the second prong of the Flast test, and the plaintiffs did not have standing. While it emphasized the limited scope of Flast, the Tarsney Court did not expressly close the door on applications of the exception to claims arising under other provisions of the Constitution.

Plaintiffs in this case base their standing on their status as state taxpayers. The general approach by the courts is to treat state and federal taxpayers the same for the purposes of standing.[1] See Tarsney, 225 F.3d at 938 (applying Flast analysis to state

---

[1] The dissent in Tarsney urged the Court to analyze the case under Doremus v. Bd. of Education, 342 U.S. 429, 433 (1952). While that approach has its merits, the

taxpayer standing); ASARCO, 490 U.S. at 613-614 (likening state taxpayers to federal taxpayers); Minnesota Fed. of Teachers v. Randall, 891 F.2d 1354, 1357 (1989)("[T]he effect of Flast was to harmonize in some respects federal and state taxpayer standing"); Taub v. Kentucky, 842 F.2d 912, 918 (6th Cir. 1988), cert. denied 488 U.S. 870 (1988)(applying Frothingham rule to state taxpayer standing); Romer, 963 F.2d at 1402. This Court will therefore apply the Flast analysis to Plaintiffs' argument.

Plaintiffs' claim is that the state statutes violate the Equal Protection Clause of the Constitution. Plaintiffs have cited no relevant precedent to support their argument that the Equal Protection Clause operates as a specific limitation on the taxing and spending powers of Congress, as required by Flast, and to the Court's knowledge none exists. This Court is not persuaded by Plaintiffs' argument that the rule of Flast should nonetheless be extended to Equal Protection Claims, and finds therefore that Plaintiffs do not have taxpayer standing under Flast.

Plaintiffs also argue that the Supreme Court in Crampton v. Zabriskie expressly approved taxpayer suits in these situations. 101 U.S. 601, 609 (1879). In Crampton, a group of New Jersey property owners sued the local municipal corporation for failing to appropriate funds when it issued bonds to purchase land for a court house from Mr. Crampton. The New Jersey Supreme Court held that the municipal corporation's actions were *ultra vires*. In affirming that court, the U.S. Supreme Court declared, "Of the right of resident tax-payers to invoke the interposition of a court of equity to prevent

---

Tarsney majority clearly rejected it in favor of an analysis under Flast. See also Randall, 891 F.2d at 1357 (holding that Flast and Doremus are relied on interchangably where establishment clause violations are urged).

an illegal disposition of the moneys of the county... there is at this day no serious question." Id. at 608; cited approvingly in Frothingham, 262 U.S. at 486-87; Doremus, 342 U.S. at 433; Flast, 392 U.S. at 93.

Plaintiffs argue that they are not protesting the expenditure of federal funds, but the state statute which provides the mechanism to receive and spend state and federal funds, and that the rule of Crampton will allow them to do so in federal court. While they acknowledge that Crampton was about a lawsuit over municipal spending, Plaintiffs argue that the word "municipal" can be understood to apply not only to towns and cities, but also to a state or nation, and therefore Crampton should be read under this broader meaning to allow state taxpayer suits. Plaintiffs' Omnibus Ans. at 14-15.

The Court disagrees. Crampton and its progeny clearly only relate to challenges to municipal, that is, city or town, spending by municipal taxpayers. The Supreme Court has expressly distinguished municipal taxpayers from federal taxpayers:

> "The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate... [b]ut the relation of a taxpayer of the United States to the federal government is very different. His interest in the moneys of the treasury... is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.

Frothingham, 262 U.S. at 48; see also Doremus, 342 U.S. at 434 (distinguishing state as well as federal taxpayers from municipal taxpayers). Plaintiffs have not convinced the Court that Crampton permits claims based on state taxpayer standing.

Since Plaintiffs failed to meet both the constitutional and prudential requirements for standing, this Court is without jurisdiction over this complaint.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for summary judgment is denied;
2. Defendants and Defendant-Intervenors' motions for summary judgment are granted. This claim is dismissed with prejudice.

Let judgment be entered.

Dated: August 13, 2001.

Michael J. Davis
United States District Court Judge

Booth et al v. Ramstad-Hvass et al
Civil File No. 00-1672 (MJD/JGL)